UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FRANK IGWEBUIKE ENWONWU,           )
                                   )
            Petitioner             )
                                   )    Civil Action No.
        v.                         )    05cv10511-WGY
                                   )
MICHAEL CHERTOFF, SECRETARY        )
OF DEPARTMENT OF HOMELAND          )
SECURITY, ET AL.                   )
                                   )
            Respondents[1]         )

RETURN AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AND OPPOSING STAY REQUEST

**SUMMARY CASE STATEMENT**

Petitioner is a native and citizen of Nigeria presently
detained by the Bureau of Immigration and Customs Enforcement of
the Department of Homeland Security ("ICE") pending execution of
his final order of removal.  His petition to this Court asserts
unlawfully prolonged post-order detention in contravention of the
Supreme Court's rule in Zadvydas v. Davis, 121 S. Ct. 2491
(2001), and asserts various due process challenges to his removal
order.

Because petitioner's removal order to Nigeria is now

---

[1] The responsive official of the Department of Homeland Security
responsible for enforcement of petitioner's removal order in the
instant action is Bruce Chadbourne, Field Office Director for
Detention and Removal, Department of Homeland Security, Bureau of
Immigration and Customs Enforcement ("ICE") in Boston,
Massachusetts. See 28 U.S.C. § 517 (providing for the appearance
of the Department of Justice "to attend to the interests of the
United States in a suit pending in a court of the United
States").

scheduled for execution on **April 12, 2005**, petitioner's removal is now "reasonably foreseeable", as required by the Supreme Court.  <u>Zadvydas v. Davis, et al.</u>, 121 S. Ct. at 2505.

Petitioner's claim of failure of notice in the former Immigration and Naturalization Service's ("INS") administrative appeal of his removal case is defeated by petitioner's recognition that his attorney of record in removal proceedings was properly served as required by 8 C.F.R. § 1292.5(a)(requiring service upon attorney for alien where alien is represented by counsel).  Petitioner does not claim any ineffective assistance of counsel as a due process violation, nor does he demonstrate any prejudice even assuming ineffective assistance of counsel. Nor did petitioner exhaust any such claims administratively in his motion to reopen to the Board of Immigration Appeals, and so any such constructive claims are barred from habeas review under 8 U.S.C. § 1252(d). <u>Sayyah v. Farquharson</u>, 382 F.3d 20, 24 (1st Cir. 2004)("The exhaustion bar contained in [8 U.S.C.] subsection (d)(1) is jurisdictional.").

Finally, petitioner's substantive due process argument fails because the BIA did *not* find that petitioner would be tortured upon return to Nigeria, and the First Circuit has ruled that execution of removal orders -- at least in the absence of 'outrageous, uncivilized, and intolerable' conduct that 'shocks the conscience'-- does not implicate substantive due process

concerns. <u>Herrera-Inirio v. INS</u>, 208 F.3d 299, 309 (1st Cir. 2000)("The second branch of the petitioner's substantive due process thesis is no more persuasive. In it, he assails the actions taken by the INS in this case. But those actions were precisely aligned with the purpose of the statute and well within its fair intendment. <u>Executive actions that do no more than comport with valid statutory commands simply are not the stuff from which substantive due process violations can be fashioned.</u> See <u>Kleindienst [v. Mandel]</u>, 408 U.S. [753 (U.S. 1972)] at 770, 92 S.Ct. 2576."). (Emphasis added).

Accordingly the case should be dismissed for failure to state a claim upon which relief may be granted, and the Court should deny the stay request and all other relief.

<strong>STATEMENT OF FACTS AND BACKGROUND</strong>

Petitioner is a native and citizen of Nigeria whose immigration history began on March 6, 1972, when he was admitted as a student.  Petitioner failed to depart when required and deportation proceedings were initiated against him on March 30, 1976, for having remained in the United States longer than authorized.  The Immigration Judge issued an order allowing petitioner to depart the United States voluntarily, and petitioner left the United States.

Petitioner attempted to re-enter the United States at Logan Airport on January 20, 1986, concealing approximately five (5)

3

ounces of heroin inside his body.  On March 21, 1986, petitioner was convicted in United States District Court, district of Massachusetts, of Importation of Heroin, in violation of 21 U.S.C. §§ 952, 960, and 963.  United States v. Frank Ike Enwonwu, No. 86-030-T (D. Mass. 1986).  Petitioner was sentenced to 5 years, execution of sentence suspended, 3 years probation, and a special parole term of 3 years.  See Petition, Exhibits 1-6.

Petitioner was then given an opportunity by the former Immigration & Naturalization Service ("INS") to depart the United States  voluntarily on or before December 17, 1986. Petition, Exhibit 7.  However, petition failed to depart voluntarily.

Petitioner was placed into removal proceedings by the INS by administrative Order to Show Cause dated June 6, 1997, as amended, as an alien convicted of a controlled substance violation, as an alien known to be a trafficker in controlled substances, and as an immigrant without an immigrant visa, under 8 U.S.C. §§ 1182(a)(2)(A)(i)(II), 1182(a)(2)(C), and 1182(a)(7)(A) respectively.

Petitioner was found to be ineligible for administrative relief and was ordered removed by decision of the immigration Judge dated August 28, 1997. Petition, Exhibit 9. Petitioner appealed to the Board of Immigration Appeals ("BIA"), which affirmed the removal order by decision dated June 10, 1998. Petition, Exhibit 12.

4

Petitioner then moved to reopen his case in order to apply for protection under the Convention Against Torture ("CAT").[2] The case was sent back to the Immigration Judge for a hearing on petitioner's CAT application.  The Immigration Judge heard testimony and granted petitioner's application for CAT protection by the Immigration Judge's Second Oral Decision, dated December 16, 1999.  Attachment A.

The INS filed a Notice of Appeal of the Second Oral Decision of the Immigration Judge to the BIA, and by decision dated May 30, 2003, the BIA vacated the decision of the Immigration Judge and ordered petitioner removed.  Petition, Exhibit 18.

Petitioner then filed a motion to reopen the BIA's May 30, 2003, removal order.  Petition, Exhibit 19.  The BIA denied that motion to reopen by decision dated February 15, 2005. Petition, Exhibit 20.

Petitioner remains in respondent's custody and is scheduled for removal to Nigeria on **April 12, 2005**. See Attachment B,

---

[2] Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, G.A. Res. 39/46, Annex, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984), 23 I.L.M. 1027 (1984). The United States ratified the convention in 1994 and, in 1998, Congress passed legislation to implement the convention's requirement that "[n]o state ... expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture," id. art. 3, S 1. Foreign Affairs Reform and Restructuring Act of 1998 § 2242, Pub.L. No. 105-277, 112 Stat. 2681- 761, -822 to - 823 (1998) (codified at  8 U.S.C. § 1231 note (Supp. V 1999)).

DECLARATION OF CHIEF IMMIGRATION ENFORCEMENT AGENT JAMES BROWN

Petitioner is also scheduled to be transported from the district of Massachusetts[3] to another location in the United States on **April 11, 2005**, preparatory to his removal on a special government removal flight.

### ARGUMENT

I.   BECAUSE PETITIONER'S REMOVAL IS NOW SCHEDULED TO OCCUR ON **APRIL 12, 2005**, THE PETITION FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Petitioner complains about the length of his detention by ICE awaiting the completion of necessary arrangements for his removal.[4] Petition, pp. 14-16.  However, because petitioner's removal is now scheduled for **APRIL 12, 2005**, petitioner fails to state a colorable claim of unlawful detention. See Attachment B, DECLARATION OF CHIEF IMMIGRATION ENFORCEMENT AGENT JAMES BROWN.

The Supreme Court in Zadvydas v. Davis, 121 S. Ct. 2491 (2001) recognized six months as a presumptively reasonable period

---

See generally Foroglou v. Reno, et al., 241 F.3d 111 (1st Cir. 2001).

[3] Obviously, respondent recognizes that the planned transportation has *no* effect on this Court's jurisdiction to make any order in the case, and arrangements are in place to execute any order of the Court notwithstanding petitioner's physical absence from the district if no order of the Court is otherwise forthcoming prior to April 11, 2005.

[4] Petitioner was apprehended by the Bureau of Immigration and Customs Enforcement Fugitive Squad on September 13, 2004.  His removal has been delayed by the fact that the Nigerian Consulate would not issue the necessary travel documents pending determination of petitioner's motion to reopen; that motion was decided by the BIA on February 15, 2005. Petition, Exhibit 20.

of detention within which to allow the government to accomplish

an alien's removal, and said that, "for the sake of uniform

administration in the federal courts, we recognize that period".

Id. at 2505.  The Court further held:

> After this 6-month period, once the alien provides good
> reason to believe that there is no significant
> likelihood of removal in the reasonably foreseeable
> future, the Government must respond with evidence
> sufficient to rebut that showing. And for detention to
> remain reasonable, as the period of prior post-removal
> confinement grows, what counts as the "reasonably
> foreseeable future" conversely would have to shrink.
> This 6-month presumption, of course, does not mean that
> every alien not removed must be released after six
> months.  To the contrary, an alien may be held in
> confinement until it has been determined that there is
> no significant likelihood of removal in the reasonably
> foreseeable future.

Zadvydas v. Davis, et al., 121 S. Ct. at 2505 (emphasis added).

In Akinwale v. Ashcroft, et al., 287 F.3d 1050 (11th Cir.

2002), the Eleventh Circuit held that six months post-final order

detention must have elapsed before the filing of a habeas

petition, and that, "in order to state a claim under Zadvydas the

alien not only must show post-removal order detention in excess

of six months but also must provide evidence of a good reason to

believe that there is no significant likelihood of removal in the

reasonably foreseeable future." Id. at 1052 (emphasis added).

In Lema v. USINS, 214 F.Supp.2d 1116, 1118 (W.D. Wash.

2002), aff'd 341 F.3d 853 (9th Cir. 2003), even where post-order

detention had exceeded six months, the district court explained

that:

The mere fact that six months has passed since petitioner was taken into INS custody does not satisfy his burden.  While an alien's detention will no longer be presumed to be reasonable after six months, there is nothing in <u>Zadvydas</u> which suggests that the Court must or even should assume that any detention exceeding that length of time is unreasonable.  Rather, the passage of time is simply the first step in the analysis.  Petitioner must then provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

In the instant case, petitioner is now scheduled for removal to Nigeria on a special United States government flight later this month, on **APRIL 12, 2005**.  <u>See</u> Attachment B. Accordingly, there is necessarily a "significant likelihood of removal in the reasonably foreseeable future" and the petition fails to state a claim upon which relief may be granted.

Respondent also hereby provides the Court advance notice of petitioner's removal scheduled for **APRIL 12, 2005**, and advises of the necessity that petitioner be **transported to an intermediate staging area in the United States preparatory to his removal to Nigeria on APRIL 11, 2005**.

II.   PETITIONER FAILS TO STATE A PROCEDURAL DUE PROCESS
      VIOLATION RELATING TO THE INS'S APPEAL TO THE BOARD OF
      IMMIGRATION APPEALS.

The basis[5] of petitioner's procedural due process claim is

---

[5] To the extent petitioner appears to complain that "[t]he BIA abused its discretion" in denying petitioner's motion to reopen, Petition, p. 19, it is well-settled that habeas will not lie for review of the exercise of administrative discretion. <u>St. Fort v. Ashcroft</u>, 329 F.3d 191, 202 (1st Cir. 2003) ("[t]he scope of habeas review is not the same as the scope of statutory judicial

his assertion that he never personally received the INS's Notice
of Appeal to the BIA of the Immigration Judge's grant of CAT
protection for petitioner.  Petition, p. 19.  According to
petitioner, this amounts to a failure "to conform with 8 C.F.R. §
1003.3(a) as governing the service of notice of appeal".
Petition, p. 19.

However, petitioner has failed to advise the Court that
while 8 C.F.R. § 1003.3(a) directs that the administrative Notice
of Appeal to the BIA be served "on the opposing party", the
governing regulations additionally enforce the familiar rule of
procedure and ethics that where a party is represented by counsel
in a proceeding, service of documents, notices, etc. in that
proceeding is directed to the party's attorney of record, *not* to
the represented party directly.  See 8 C.F.R. § 1292.5(a)
("*Representative capacity*. Whenever a person is required by any
of the provisions of this chapter to give or be given notice; to
serve or be served with any paper other than a warrant of arrest
or a subpoena; to make a motion; to file or submit an application
or other document; or to perform or waive the performance of any
act, such notice, service, motion, filing, submission,
performance, or waiver shall be given by or to, served by or

---

review in the courts of appeal. . . . if a statute makes an alien
eligible to be considered for a certain form of relief, he may
raise on habeas the refusal of the agency to even consider him.
But he may not challenge the agency's decision to exercise or not
exercise its discretion to grant relief.")

upon, made by, or requested of the attorney or representative of record, or the person himself if unrepresented.").

In this connection, petitioner candidly recognizes that "[t]he proof of service filed by the DHS shows that the notice was mailed to Petitioner's former attorney (Attorney Pelino) for proceedings at the Immigration Court." Petition p. 19. It follows that petitioner was properly served with the Notice of Appeal filed by the former INS in accordance with the provisions of 8 C.F.R. § 1292.5(a), and petitioner has failed to state any claim of error in this regard in the BIA's February 15, 2005, denial of his motion to reopen. See Petition, Exhibit 20 (BIA observing "the record indicates that the Notice of Appeal (EOIR Form 26) was mailed to the respondent's former attorney at the last known address in the file.").

Petitioner asserts, though, that attorney Pelino "filed an affidavit stating that he had moved to Arizona, and could not recollect whether he received processes regarding the case or not." Id., n.17. However, the October 8, 2004, affidavit from attorney Pelino produced by petitioner as part of Exhibit 19 to the Petition contains no such declaration from that attorney regarding recollection, nor has respondent seen any other affidavit by attorney Pelino, nor is there any indication when the attorney moved.

Nor would such a failure of recollection as to routine case

10

minutiae by an attorney 5 years after the fact establish any
colorable due process claim. Though petitioner has asserted that
"he never received the Notice of Appeal from Attorney Pelino",
Petition, p. 19 n.18, no claim of ineffective assistance of
counsel was ever raised, perfected, and exhausted in his motion
to reopen to the BIA. See Petition, Exhibit 19. See also Jupiter
v. Ashcroft, 396 F.3d 487, 491 (1st Cir. 2005) ("[c]ounsel's
factual assertions in pleadings or legal memoranda are not
evidence and do not establish material facts.").

Nor does petitioner raise such a claim in the instant case,
nor could he. Sayyah v. Farquharson, 328 F.3d 20, 26 (1st Cir.
2004) ("We conclude that section 1252(d)'s exhaustion requirement
applies generally to habeas corpus petitions. To hold otherwise
would drastically limit the utilization of a salutary principle
customarily applied in respect to administrative proceedings.
Such an interpretation would allow an alien subjected to an
adverse decision to reject the very administrative review
processes established to correct mistakes and to insist, instead,
upon immediate access to a federal court. Accordingly, we hold
that section 1252(d)'s exhaustion requirement applies broadly to
all forms of court review of final orders of removal, including
habeas corpus.)(footnote omitted)."). See generally Georcely v.
Ashcroft, 375 F.3d 45, 51 (1st Cir. 2004) (However, if freely
indulged, ineffective assistance claims would undermine the

11

stringent requirements of section 1229a(b)(5)(C) (and much else in the statute besides) so the BIA has insisted that the alien has to comply with the procedural requirements of <u>Matter of Lozada</u>, 19 I. & N. Dec. 637 (BIA 1988). These include the filing of a bar complaint against counsel or adequately explaining why the complaint has not been filed. <u>See</u> <u>Tang</u>, 354 F.3d at 1196; <u>In re Rivera</u>, 21 I. & N. Dec. at 603. So far as we know, neither has occurred in this case. Although we have hinted that full compliance with <u>Lozada's</u> requirements might be excused in an appropriate case, <u>Betouche v. Ashcroft</u>, 357 F.3d 147, 150 (1st Cir.2004), the <u>Lozada</u> requirements generally make sense. It is all too easy after the fact to denounce counsel and achieve a further delay while that issue is sorted out. And in the absence of a complaint to the bar authorities, counsel may have all too obvious an incentive to help his client disparage the quality of the representation."); <u>Jupiter v. Ashcroft</u>, 396 F.3d 487, 492 (1st Cir. 2005) (although an asserted denial of due process "may, in certain limited circumstances, be exempt from the ordinary exhaustion requirement . . . . [t]hese circumstances are rare and restricted to claims that are beyond the authority of the agency to adjudicate.").

    Subsequent to the former INS serving the Notice of Appeal, petitioner asserts that he changed his address, but did not notify the Immigration Court or the BIA, or the former INS.

Petition, p. 20.  See 8 C.F.R. § 1003.15(d)(2) (written notice on form EOIR-33 must be reported to the Immigration Court of address change "[w]ithin five days of any change of address"); 8 C.F.R. § 265.1 (aliens required to report change of address to INS "within 10 days on Form AR-11"); Sousa v. Ashcroft, 393 F.3d 271, 275 (1st Cir. 2005)(an alien has an "affirmative duty to update his address with the INS should he move" under 8 U.S.C. § 1305(a)(aliens must report change of address within 10 days of change of address).

Despite failing entirely to comply with the law regarding change of address, petitioner asserts that because his sister notified the United States Postal Service of the change of address, and because BIA attempts to re-send documents to petitioner at this new, unreported, address did not include a "c/o Rose O. Mgbojikwe" line, that there was a denial of due process. Petition, pp. 20-21.  Petitioner's assertions that he always used his current address when applying for employment authorization is no substitute for compliance with the specific change-of-address statute and regulations.  Once petitioner's attorney was served with the INS Notice of Appeal, petition was required to keep the Immigration Court affirmatively apprised of address changes.

Accordingly, the petition fails to state a colorable claim within the scope of habeas review as required by Carranza v. INS,

277 F.3d 65, 71 (1st Cir. 2002) ("[f]ederal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated.").

III. PETITIONER FAILS TO STATE A COLORABLE SUBSTANTIVE DUE PROCESS CLAIM.

Petitioner asserts an undeveloped Constitutional claim of a denial of substantive due process. Petition, pp. 21-23. However, petitioner ignores the long-established precedent that deportable or removable aliens have no substantive due process right to remain in the United States. Harisiades v. Shaughnessy, 342 U.S. 580, 586-587 (1952); see also United States v. Oboh, 92 F.3d 1082, 1087 (11th Cir. 1996) (en banc) ("We also note that defendants 'subject to deportation' have no constitutional or statutory right to remain in this country.") (citing Harisiades, 342 U.S. at 586-587); Jean v. Nelson, 727 F.2d 957, 967-968 (11th Cir. 1984) (en banc) (recognizing only limited procedural due process rights for aliens subject to deportation).

In Harisiades, the Supreme Court assessed the Constitutional rights available to aliens as follows:

> Under our law, the alien in several respects stands on
> an equal footing with citizens [equal economic
> opportunity, personal liberty, criminal proceedings,
> and property], but in others has never been conceded
> legal parity with the citizen. Most importantly, to

14

protract this ambiguous status within the country is
not his right but is a matter of permission and
tolerance.  The Government's power to terminate its
hospitality has been asserted and sustained by this
Court since the question first arose.

Id. at 586-87 (footnotes omitted).

Insofar as removable aliens have no Constitutional right to
remain in the United States, any substantive due process
challenge to deportation is directly contrary to long established
Supreme Court precedent. Id.  See also Sad v. INS, 246 F.3d 811,
819 (6th Cir. 2001) ("[A]liens illegally in the United States do
not have a fundamental right to remain", citing Harisiades v.
Shaughnessy, 342 U.S. 580, 586-87 (1952)); Doherty v. Meese, 808
F.2d 938, 944 (2nd Cir. 1986)("there is no substantive due
process right not to be deported."); Linnas v. INS, 790 F.2d
1024, 1031 (2d Cir. 1986)("Congress has broad authority over the
status of aliens, and there is no substantive due process right
not to be deported. See e.g., Galvan v. Press, 347 U.S. 522, 530-
32, 74 S.Ct. 737, 742-44, 98 L.Ed. 911 (1954); Harisiades v.
Shaughnessy, 342 U.S. 580, 590-91, 72 S.Ct. 512, 519-20, 96 L.Ed.
586 (1952); Basset v. United States Immigration and
Naturalization, 581 F.2d 1385, 1386-87 (10th Cir. 1978).").

Petitioner's reliance on Munger v. City of Glasgow Police
Dept., 227 F.3d 1082 (9th Cir. 2000) is misplaced.  In that 42
U.S.C. § 1983 case, the police ejected an intoxicated bar patron
wearing only jeans and a t-shirt into subfreezing temperatures in

15

Montana, and prevented him from operating his vehicle. The bar
patron then froze to death, and his family sued under 42 U.S.C. §
1983.  The circuit court determined that the officers were aware
of the danger, and yet that it was indisputable that the officers
had put petitioner in a worse position, with the result that he
died.

In contrast, the instant case is an enforcement action
against a removable alien who has been found ineligible for
relief from removal.  Petitioner's assertion that he would be
sent "to a torturous and likely death", Petition, pp. 23-24, has
already been *rejected* administratively by the BIA.  Petition,
Exhibit 18, Board of Immigration Appeals decision dated May 30,
2003.

For its part, the First Circuit has recognized the
substantive due process analysis in Deshaney v. Winnebago County
Dept. of Social Services, 489 U.S. 189, 197 (1989) as "holding
that ordinarily a state's failure to intervene to prevent harm to
an individual by a private actor is not a constitutional
violation."  Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir.
1999).  With respect to the so-called "state created danger
exception" to this general rule the First Circuit has noted,
somewhat tepidly, that "[t]his danger-creation theory, building
tenuously on a footnote in Deshaney distinguishing such a

16

situation from Deshaney itself . . . has been adopted in several circuits". Hasenfus, 175 F.3d at 73 n.3.

Hasenfus nonetheless recognized this general development by observing that "[w]here a state official acts so as to create or even markedly increase a risk, due process constraints may exist, even if inaction alone would raise no constitutional concern." Id. at 73 (emphasis added). However, even assuming such a showing, Hasenfus has observed that "[t]he basic due process constraint, where substance and not procedure is involved, is against behavior so extreme as to 'shock the conscience.'". Id. at 72.

The First Circuit then amplified its understanding of this threshold standard of behavior, explaining that "[o]utside of a few narrow categories, like the safeguarding of prisoners who have been wholly disabled from self-protection, this means conduct that is truly outrageous, uncivilized, and intolerable." Hasenfus, 175 F.3d at 72. See also Willahauck v. Town of Mansfield, 164 F.Supp.2d 127, 135 (D. Mass. 2001) (Saris, D.J.) ("Even where the government has created or markedly increased a risk of harm, no violation of substantive due process occurs unless 'the behavior [is] conscience-shocking or outrageous'", citing Hasenfus, 175 F.3d at 73).

However, even such heavily qualified recognition by the First Circuit in Hasenfus of a "danger-creation theory" exception

17

to the Deshaney general rule must be read as limited to the non-enforcement context of liability for deprivation of Constitutional rights within the meaning of 42 U.S.C. § 1983. For a criminal alien such as petitioner who has been ordered removed or deported, there *is* no substantive due process right not to be deported, nor is enforcement of the removal order the "stuff from which substantive due process violations can be fashioned." Herrera-Inirio v. INS, 208 F.3d 299, 309 (1st Cir. 2000)

Accordingly, petitioner's reliance upon the unpublished Rosciano v. Sonchik, No. CIV 01-472-PHX-FJM, 2002 U.S. Dist. LEXIS 25419 (D. Ariz., Sep. 10, 2002), is unavailing. To begin with, Rosciano is in conflict with the First Circuit jurisprudence that "Executive actions that do no more than comport with valid statutory commands simply are not the stuff from which substantive due process violations can be fashioned". Herrera-Inirio, 208 F.3d at 309. In addition, there was no discussion in Rosciano of the line of authority elsewhere that establishes that deportable or removable aliens have no substantive due process right to remain in the United States. See e.g. Harisiades v. Shaughnessy, 342 U.S. 580, 586-587 (1952).

Nor in Rosciano was there even any determination whether government behavior was "truly outrageous, uncivilized, and intolerable", Hasenfus, 175 F.3d at 72. Finally, even Rosciano itself recognized that its result was made "[u]nder the unique

18

and compelling facts presented in this case," which included the undisputed facts that drug traffickers murdered petitioner's brother, and that petitioner's sister died under suspicious circumstances after being informed by a drug lord that she would not be forgiven for her discovered cooperation, in concert with that petitioner, with law enforcement.

Accordingly, petitioner has failed to state a claim of substantive due process violation.

IV. PETITIONER FAILS TO STATE ANY COLORABLE CLAIM OF LEGAL ERROR IN THE MAY 30, 2003, DECISION OF THE BOARD OF IMMIGRATION APPEALS.

Because petitioner failed to defend the INS appeal from the Immigration Judge's grant of CAT protection, he has failed to exhaust his administrative remedies and habeas review of the BIA's May 30, 2003, decision is barred by 8 U.S.C. § 1252(d).

In Sayyah v. Farquharson, 382 F.3d 20, 26 (1st Cir. 2004) the First Circuit held that an alien could not maintain a habeas corpus action seeking review of issues that could have been but were not exhausted administratively. The Sayyah decision directly controls the instant case in that the First Circuit there declared "[w]e conclude that [8 U.S.C.] section 1252(d)'s exhaustion requirement applies generally to habeas corpus petitions. To hold otherwise would drastically limit the utilization of a salutary principle customarily applied in respect to administrative proceedings. Such an interpretation

would allow an alien subjected to an adverse decision to reject the very administrative review processes established to correct mistakes and to insist, instead, upon immediate access to a federal court. Accordingly, we hold that section 1252(d)'s exhaustion requirement applies broadly to all forms of court review of final orders of removal, including habeas corpus." <u>Id</u>.

Accordingly, because petitioner abandoned his administrative opportunity to defend the Immigration Judge's grant of CAT protection in the INS appeal to the BIA, he has failed to exhaust his administrative remedies and can not now claim habeas review of those same issues. <u>Sayyah v. Farquharson</u>, 382 F.3d 20, 24-25 (1st Cir. 2004)("Section 1252(d) . . . does not purport to eliminate judicial review. Rather, it premises judicial review upon the prior exhaustion of administrative remedies.").

However, even if there were habeas review of the BIA's May 30, 2003, reversal of the Immigration Judge's CAT grant, petitioner assigns no error to that decision.  Although petitioner bruits the decision of the Immigration Judge as correct, albeit arguably also taking considerable license in his characterization of the Immigration Judge's findings, he makes no claim of error as to the BIA decision and seeks merely to reargue the evidence or to "add" new evidentiary arguments. Petition, p. 24.

The Second Oral Decision of the Immigration Judge was

relatively narrow.  <u>See</u> Attachment  A.   Moreover, nothing in it

supports petitioner's habeas assertions that the Immigration

Judge "believed that the DEA indeed had promised the Petitioner a

true sanctuary from Nigerian authorities", or that the

Immigration Judge "found Petitioner truthful and convincing".[6]

Although petitioner seeks to defend the Immigration Judge's

Second Oral Decision, Attachment A, the BIA has reversed that

decision and petitioner states no claim of error in the BIA's May

30, 2003, decision. Accordingly, the petition fails to state a

colorable claim within the scope of habeas review as required by

<u>Carranza v. INS</u>, 277 F.3d 65, 71 (1st Cir. 2002) ("[f]ederal

courts therefore retain subject matter jurisdiction over habeas

petitions brought by aliens facing removal to the extent those

petitions are based on colorable claims of legal error, that is,

colorable claims that an alien's statutory or constitutional

rights have been violated.").

<u>**CONCLUSION**</u>

For all the reasons set out above, the petition should be

dismissed, and the stay request and all other relief denied.

---

[6] In fact, to the extent any credibility determination was made
by the Immigration Judge, it was the judge's indication "that I
disbelieved the respondent's testimony about having identified
various members of the Nigerian military as being his co-

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  s/Frank Crowley
     FRANK CROWLEY
     Special Assistant U.S. Attorney
     Department of Homeland Security
     P.O. Box 8728
     J.F.K. Station
     Boston, MA 02114
     (617) 565-2415

## CERTIFICATE OF SERVICE

I hereby certify that I caused true copy of the above document to
be served upon counsel for petitioner by mail on March 28, 2005.

s/Frank Crowley
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114

---

conspirators". See Attachment A, Second Oral Decision of the
Immigration Judge, p. 2.

22

**ATTACHMENT A**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
Boston, Massachusetts

File No.:  A 19 337 631                    December 16, 1999

In the Matter of                )
                                )
FRANK ENWONWU                   )    IN REMOVAL PROCEEDINGS
                                )
            Respondent          )

CHARGES:     Section 212(a)(2)(A)(i)(II) of the Immigration and
             Nationality Act - convicted of controlled
             substance violation;

             Section 212(a)(6)(A)(i) of the Immigration and
             Nationality Act - present without admission or
             parole;

             Section 212(a)(2)(C) of the Immigration and
             Nationality Act - illicit trafficker in controlled
             substance.

APPLICATION:   Convention Against Torture.

ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:

Anthony Pelino, Esquire           Susan Hiller, Esquire
101 Tremont St., Ste. 314         Assistant District Counsel
Boston, Massachusetts  02108      JFK Federal Bldg., Rm. 425
                                  Government Center
                                  Boston, Massachusetts  02203

SECOND ORAL DECISION OF THE IMMIGRATION JUDGE

This case originally came on before me for a hearing on

August 28, 1997.  At that time, I found the respondent to be

removable from the United States and pretermitted his

applications for political asylum and withholding of removal, in

that the respondent had been convicted of an aggravated felony

and had been sentenced to five or more years imprisonment.  I

hereby reaffirm my finding of removability, as well as my finding

1

that the respondent is presumed to have been convicted of a
particularly serious crime because of his sentence.

I ultimately reopened this case in order to provide the
respondent with an opportunity to testify with respect to his
fear of being tortured in Nigeria if he were to be returned to
that country.  Separate hearings were held on this issue,
culminating in the final hearing before me today.

Essentially, the facts are that the respondent was
apprehended while attempting to enter the United States on or
about January 20, 1986, and was found to be smuggling narcotics
into this country.  This of course, is the behavior which led to
his conviction.  Ultimately the respondent cooperated with the
United States Drug Enforcement Administration and while I have
indicated that I disbelieved the respondent's testimony about
having identified various members of the Nigerian military as
being his co-conspirators, I do conclude that he did cooperate
with the Drug Enforcement Administration and provided names.  It
is unclear to me as to whether or not there was any follow-up by
the DEA, but in any event, Agent Lemon, who testified before me,
did confirm the cooperation of the respondent.  The reason for my
disbelieving the respondent's testimony about the identity of his
co-conspirators was the testimony of Agent Lemon, that he
certainly would have remembered if a high level military official
were to have been identified by the respondent.

Notwithstanding this, I had indicated during the course of

A 19 337 631                    2                  December 16, 1999

this hearing, that the issue was whether or not the respondent, having been convicted of a drug trafficking crime in this country, having cooperated with the Drug Enforcement Administration, and having been involved with smuggling narcotics into this country from Nigeria, would face the likelihood of torture upon his return to Nigeria.

What is clear to me is that the respondent was involved with others in Nigeria and there also remains the possibility that the people with whom he was involved were indeed connected to the military or the Government without this being obvious on the surface.

The applicant for deferral of removal, under the Torture Convention, bears the burden of proving that it is more likely than not that he would be tortured if removed to the proposed country of removal. The documentary evidence of record, which is bolstered by the expert testimony of Professor Michael J. Watts, of the University of California at Berkeley, is that Nigeria is a narcotics trafficking center of major proportions and the base for narcotics trafficking organizations that are responsible for a significant portion of the heroine that is abused in the United States. Furthermore, the Nigerian Government has fostered a climate receptive to criminal activities and it is widely believed that corruption and criminal activity and narcotics trafficking are fostered by some of the Nigerian elite, some of whom have links to ranking Nigerian Government officials, as well

A 19 337 631                    3                December 16, 1999

as the military.

Also clearly established is the fact that the Nigerian prison system is a haven for human rights abuses and that prisoners within that system are routinely beaten and tortured. The documentary evidence of record also reflects that it is the policy and the law in Nigeria that those who have been convicted of drug trafficking crimes outside of that country are subject to arrest, detention, and prosecution on account of those convictions.

Professor Watts testified that the respondent would be highly identifiable upon his return to Nigeria and that many people who do return to that country after even 10 to 15 years are apprehended and arrested for grievances which the Government might have against them which occurred a long time ago. It seems to me that it is more likely than not that the respondent would be identified and apprehended upon his return to Nigeria. The respondent would be deported to that country and certainly he would be immediately identifiable to authorities by virtue of being returned to that country under an order of deportation. It seems to me that it is more likely than not that either the Government would apprehend and arrest him because of his conviction in the United States and subject him to imprisonment and potential torture because of the law in that country, or because of the interrelationship of the drug traffickers, the military and the Government, that retribution would be still

A 19 337 631                    4                    December 16, 1999

sought against him because of his cooperation with the Drug Enforcement Administration.

Professor Watts clearly has an in-depth knowledge of the country conditions in Nigeria and I found him to be an informative, ~~confused~~ knowledgeable and believable witness.  I do believe that if the respondent were to return to Nigeria, that he would be likely to experience torture.  I believe that the retaliation, either by the military or the Government, would amount to acquiescence by a Governmental agency, and while of course as indicated by Professor Watts, nothing is absolutely certain, I do believe that it is more likely than not that the respondent would face torture if he were to be returned to Nigeria.

Therefore, the following order will be entered:

<u>ORDER</u>

IT IS HEREBY ORDERED that the respondent's application for deferral of removal, pursuant to Article 3 of the Convention Against Torture, be granted.

LEONARD I. SHAPIRO
United States Immigration Judge

CERTIFICATE PAGE

I hereby certify that the attached proceeding before JUDGE LEONARD I. SHAPIRO, in the matter of:

FRANK ENWONWU

A 19 337 631

Boston, Massachusetts

is an accurate, verbatim transcript of the cassette tape as provided by the Executive Office for Immigration Review and that this is the original transcript thereof for the file of the Executive Office for Immigration Review.


*Donna L. Ballard*
Donna L. Ballard, Transcriber

Free State Reporting, Inc.
1324 Cape St. Claire Road
Annapolis, Maryland  21401
(301) 261-1902


April 5, 2000
(completion date)


By submission of this CERTIFICATE PAGE, the Contractor certifies that a Sony BEC/T-147, 4-channel transcriber or equivalent, as described in Section C, paragraph C.3.3.2 of the contract, was used to transcribe the Record of Proceeding shown in the above paragraph.

ATTACHMENT B

## DECLARATION OF CHIEF IMMIGRATION
## ENFORCEMENT AGENT JAMES BROWN

Pursuant to the authority of 28 U.S.C. § 1746, I,
JAMES BROWN, Chief Immigration Enforcement Agent at the
Boston, Massachusetts, office of the Bureau of Immigration
and Customs Enforcement of the United States Department of
Homeland Security ("ICE"), declare as follows:

1. I am the Chief Immigration Enforcement Agent at the
Boston, Massachusetts, office of the Bureau of Immigration
and Customs Enforcement of the United States Department of
Homeland Security ("ICE").

2. Included in my official duties as a Chief
Immigration Enforcement Agent is the responsibility for
supervising and monitoring the execution of orders of
removal and deportation.  This responsibility relates to the
process of confirming the existence of the necessary
authorizations, or "travel documents", issued by foreign
governments for the return of removable aliens to their
respective home countries, and to the process of confirming
the scheduling of the execution of removal orders by
aircraft.

3.  As a Chief Immigration Enforcement Agent in
Boston, I am generally familiar with the process for travel
document issuance by the various foreign governments, and
particularly familar with the day to day mechanisms of

scheduling execution of and executing removal orders.

4.    At the request of Special Assistant United States
Attorney Frank Crowley, I have examined the administrative
records available to me of efforts to enforce the final
administrative removal order in the case of FRANK IGWEBUIKE
ENWONWU, Administrative File No. A19 337 631.  Upon review
of the records available to me as a Chief Immigration
Enforcement Agent, I confirm that FRANK IGWEBUIKE ENWONWU
has now been scheduled for removal to Nigeria on a specially
chartered governmental (United States) Justice Prisoner and
Alien Transportation System ("JPATS") flight, **on April 12,
2005.**

5.    Based upon my experience generally as a Chief
Immigration Enforcement Agent in Boston, Massachusetts, and
upon my review of and familiarity with the specific
arrangements being made to effect the removal of removable
aliens back to Nigeria by JPATS flight, it is my expectation
that FRANK IGWEBUIKE ENWONWU will be removed as scheduled to
Nigeria **on April 12, 2005,** and it is my belief that there is
certainly at least a substantial likelihood of the same
occurring.

I declare, under penalty of perjury that the foregoing
is true and correct.

Executed on: 3/28/05
             Date          Signature

                           JAMES BROWN
                           Chief Immigration
                           Enforcement Agent
                           U.S. Dept. Homeland Security
                           Bureau of Immigration & Customs
                           Enforcement
                           Boston, Massachusetts