UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FRANK IGWEBUIKE ENWONWU,           )
                                   )
            Petitioner             )
                                   )        Civil Action No.
      v.                           )        05cv10511-WGY
                                   )
MICHAEL CHERTOFF, SECRETARY        )
OF DEPARTMENT OF HOMELAND          )
SECURITY, ET AL.                   )
                                   )
            Respondents[1]         )

RESPONDENT'S SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS

**SUMMARY STATEMENT**

On March 28, 2005, respondent moved for dismissal of this action for lack of subject matter jurisdiction and for failure to state any claim upon which relief may be granted. Petitioner has failed to file any opposition to that motion. See LR, D.Mass. Rule 7.1(B)(2) (opposition to motion to be filed with 14 days of service of motion unless otherwise specified).

At hearing on April 11, 2005, the Court indicated its focus on petitioner's assertion of a substantive due process claim relating to petitioner's removal to Nigeria. Therefore,

---

[1] The responsive official of the Department of Homeland Security responsible for enforcement of petitioner's removal order in the instant action is Bruce Chadbourne, Field Office Director for Detention and Removal, Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") in Boston, Massachusetts. See 28 U.S.C. § 517 (providing for the appearance of the Department of Justice "to attend to the

in the absence of any memorandum of opposition to respondent's motion to dismiss or other memorandum of petitioner further articulating or developing the due process claim, respondent seeks leave of Court to supplement its legal memorandum to be congruent with the Court's zone of inquiry.

In particular, respondent submits that the petition fails to state a claim upon which relief may be granted for the reasons, inter alia, set out below under the First Circuit's recent Rivera v. State of Rhode Island, 402 F.3d 27, 38 (1st Cir. 2005)("[m]erely alleging state actions, which render the individual more vulnerable to harm, under a theory of state created danger, cannot be used as an end run around Deshaney's core holding."). Moreover, according to Rivera, "[i]n substantive due process cases, the Supreme Court has held that such claims must be carefully scrutinized to determine if the alleged facts support the conclusion that the state has violated an individual's constitutional rights." Id. at 33.

**ARGUMENT**

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE BAR OF 8 U.S.C. § 1252(g).

Because petitioner does not now[2] seriously challenge any aspect of the removal order of the Board of Immigration Appeals ("BIA") and candidly seeks a direct and permanent injunction

---

interests of the United States in a suit pending in a court of the United States").

against the execution of his removal order, the Court now lacks subject matter jurisdiction to consider any action "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g).[3] See generally Reno v. American-Arab Anti-Discrimination Committee et al., 525 U.S. 471, 483 (1999) ("AADC") ("[t]here was good reason for Congress to focus special attention on, and make special provision for, judicial review of the Attorney General's discrete acts of 'commenc[ing] proceedings, adjudicat[ing], [and] execut[ing] removal orders . . . . [Because] [a]t each stage the Executive has discretion to abandon the endeavor . . . .". (Emphasis added).

    In essence, because petitioner does not claim any statutory entitlement under the Immigration and Nationality Act ("INA") or any other statute, to a relief or exemption from the execution of his lawfully issued order of removal, his claims

---

[2] Petitioner agreed with the Court at hearing on April 11, 2005, that his procedural due process claim based upon lack of notice was essentially moribund.

[3]

    (g) EXCLUSIVE JURISDICTION.--Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g) (emphasis added).

are barred by 8 U.S.C. § 1252(g). Cf. Foroglou v. Reno, 241 F.3d 111, 115 (1st Cir. 2001)(suggesting in the case of a CAT denial that "it is hard to view the habeas petition as anything other than an attempt, contrary to [INA] section 242(g) [8 U.S.C. § 1252(g)] to prevent the Attorney General from 'execut[ing] [a] [removal order[].'").

II.  HABEAS CORPUS REVIEW OF PETITIONER'S REMOVAL ORDER IS LIMITED TO REVIEW OF "COLORABLE CLAIMS OF LEGAL ERROR".

        Even if this action is not otherwise barred under 8 U.S.C. § 1252(g) see ARGUMENT, Part I,  the petition fails to state a colorable claim within the scope of habeas review as required by Carranza v. INS, 277 F.3d 65, 71 (1st Cir. 2002) ("[f]ederal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated.").

        In INS v. St. Cyr, 533 U.S. 289 (2001) the Supreme Court answered the question, already resolved in the affirmative in the First Circuit by Mahadeo v. Reno, 226 F.3d 3 (1st Cir. 2000), whether habeas corpus jurisdiction exists for review of pure issues of law in challenges to final orders of removal.[4] "In sum," wrote Justice Stevens, "even assuming that the Suspension Clause protects only the writ as it existed in 1789,

there is substantial evidence to support the proposition that
pure questions of law like the one raised by the respondent in
this case could have been answered in 1789 by a common law
judge with power to issue the writ of habeas corpus." St. Cyr
at 304-5.

   The Supreme Court, however, drew a sharp distinction
between review of cases presenting pure law questions, and
review of other, fact-bound, or discretionary cases.  The Court
recognized that St. Cyr's "application for a writ of habeas
corpus raises a pure question of law.  He does not dispute any
of the facts that establish his deportability or the conclusion
that he is deportable.  Nor does he contend that he would have
any right to have an unfavorable exercise of the Attorney
General's discretion reviewed in a judicial forum.  Rather, he
contests the Attorney General's conclusion that, as a matter of
statutory interpretation, he is not eligible for discretionary
relief." Id. at 298 (emphasis added).

   The Supreme Court also observed that, "in the immigration
context, 'judicial review' and 'habeas corpus' have
historically distinct meanings." St. Cyr at 290, citing
Heikkila v. Barber, 345 U.S. 229 (1953).  In St. Cyr the
Supreme Court noted its determination in Heikkila, supra, that
"the limited role played by the courts in habeas corpus

---

[4] The Supreme Court's very brief opinion in Calcano-Martinez v.
INS, 121 S. Ct. 2268 (2001) effectively adopted the detailed
reasoning of its St. Cyr opinion.

proceedings was far narrower than the judicial review authorized by the APA", and that "'it is the scope of inquiry on habeas corpus that differentiates' habeas review from 'judicial review.'" St. Cyr at 312, citing Heikkila, 345 U.S. at 236.

Indeed, the Supreme Court cited to Mahadeo v. Reno, 226 F.3d 3, 12 (1st Cir. 2000) for circuit court recognition that "judicial review" "is a term historically distinct from habeas." St. Cyr at 313-4.  See e.g. Mahadeo, supra, at 8 fn.6 ("Because Mahadeo's petition asserts purely statutory interpretation and constitutional questions, it falls squarely within the ambit of § 2241's jurisdictional grant.").  See Goncalves v. Reno, et al., 144 F.3d 110, 125 (1st Cir. 1998) ("[o]ur holding is narrow and nothing we say should be taken to suggest that such [28 U.S.C. § 2241] review as is available on habeas is necessarily as broad as the traditional administrative review available under old § 106.").

It has been further held in the circuit courts that such habeas corpus jurisdiction in the federal courts as may exist to review removal orders does not reach factual or discretionary determinations.  In Sol v. INS, 274 F.3d 648 (2d Cir. 2001), the Second Circuit affirmed a district court's dismissal of a habeas corpus petition seeking to challenge a discretionary determination of the INS. The Second Circuit in Sol noted that a petition for habeas corpus may be used to

challenge incarceration or orders of deportation as being "in violation of the Constitution or laws or treaties of the United States." Sol at 650.  The court also noted, however, that Sol challenged only the IJ and BIA's discretionary calculus as "lack[ing] adequate support in the record." Id.  The Second Circuit stated that "[t]his sort of fact-intensive review is vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors." Id. See also Giap v. INS. 311 F.Supp.2d 438, 439 (S.D.N.Y. 2004) (2004 WL 594889, *1)("However, habeas review of deportation orders extends only to 'statutory or constitutional claim[s]'; it 'does not extend to review of factual or discretionary determinations.' Sol v. I.N.S., 274 F.3d 648, 651 (2d Cir. 2001)."

The First Circuit has in Carranza v. INS, 277 F.3d 65, 71 (1st Cir. 2002) confirmed its understanding of the Supreme Court's St. Cyr ruling that "[f]ederal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated."  See also Reid v. INS, 203 F.Supp.2d 47, 49 (D. Mass. 2002) (same); Diosa-Ortiz v. Ashcroft, 334 F.Supp.2d 27, 31 (D. Mass. 2004) (appeal filed Aug. 26, 2004, No. 04-2141 (1st Cir.))(habeas petitioner's challenge to administrative

fact-finding as clearly erroneous rejected by district court as "vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors", citing Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001)); Lopez v. Ashcroft, 267 F.Supp.2d 150, 153 (D. Mass. 2003)(Young, C.J.)(Court holding that where a "fact-intensive review" of a legal determination "demands an extensive factual inquiry", that therefore "the Court does not possess habeas jurisdiction in th[e] case."); Sawan v. Farquharson, No. 02-10959-RGS (D. Mass. 2002) (2002 WL 1465771, *1) (the scope of habeas review of deportation orders "does not include factual or discretionary determinations made by the INS."); Sulaiman v. Attorney General, 212 F.Supp.2d 413, 416 (E.D.Pa. 2002) ("scope of review of [deportation orders] is limited to questions of law.").

For the reasons set out below, petitioner has failed to state any colorable claim of legal error or other claim within the proper scope of habeas corpus review. He does not now say that there is any legal error in the removal order itself, only that the execution of it in view his former alleged confidential source activities would violate substantive due process.

III. THE PETITION FAILS TO STATE ANY COLORABLE CLAIM OF
     CONSTITUTIONAL ERROR IN HIS REMOVAL BECAUSE PETITIONER HAS
     NO SUBSTANTIVE DUE PROCESS RIGHT NOT TO BE REMOVED AS A
     CRIMINAL ALIEN.

Petitioner, an alien ordered removed upon the basis of his
criminal conviction for Importation of Heroin, seeks to invoke
habeas corpus jurisdiction as a means to permanently enjoin his
removal from the United States upon the theory that he has a
substantive due process right not to be removed to Nigeria.

Petitioner's claims that because he acted as a
confidential source and assisted in a drug investigation in
1986 deriving directly from his own importation of Heroin
resulting in the arrest and conviction of two or possibly three
others with Nigerian connections, petitioner's removal to
Nigeria "would be placing him in a position more dangerous than
it found him, and the Constitution prohibits this."  Petition,
p. 23. Petitioner adds that "the mere thought that [DHS] would
send him to a torturous and likely death shocks the
conscience."  Petition, pp. 23-4.

Though petitioner adverts to the existence of a so-called
"danger-creation" exception to the Supreme Court's core bedrock
in Deshaney v. Winnebago County Dep't of Soc. Servs., 489 U.S.
189, 197 (1989) that "a State's failure to protect an
individual against private violence simply does not constitute
a violation of the Due Process Clause", no such exception has
been recognized in this Circuit, nor does petitioner cite any
First Circuit authority in support of its existence.

There is no substantive due process right not to be deported or removed for aliens who have been ordered deported or removed, and Executive actions such as removing aliens ordered removed from the United States that "do no more than comport with valid statutory commands are simply <u>are not the stuff from which substantive due process violations can be fashioned</u>." <u>Herrera-Inirio v. INS</u>, 208 F.3d 299, 309 (1st Cir. 2000).

In <u>Deshaney</u>, plaintiffs sued on a 42 U.S.C. § 1983 cause of action based upon the idea that the state deprived plaintiffs of their Constitutional rights by failing to adequately protect a minor who was later violently attacked and permanently injured and disabled by a parent. On the facts, the state arguably had before it substantial indicia that the 4-year child was at risk in the custody of his father, yet did not act to remove the child in time. The Supreme Court accepted that under the case facts -- which included a prior state removal of the child from the father's custody -- there could well have been some state duty of care that might support a state law tort case. However, the Supreme Court in <u>Deshaney</u> concluded that "the State had no constitutional duty to protect Joshua against his father's violence, [and] its failure to do so -- though calamitous in hindsight -- simply does not constitute a violation of the Due Process Clause." <u>Deshaney</u>, 489 U.S. at 201-2.

For its part, the First Circuit has in the past recognized the substantive due process analysis in <u>Deshaney</u> as "holding that ordinarily a state's failure to intervene to prevent harm to an individual by a private actor is not a constitutional violation." <u>Hasenfus v. LaJeunesse</u>, 175 F.3d 68, 71 (1st Cir. 1999). With respect to the so-called "state created danger exception" to this general rule, the First Circuit has noted, somewhat tepidly, that "[t]his danger-creation theory, building tenuously on a footnote in <u>Deshaney</u> distinguishing such a situation from <u>Deshaney</u> itself . . . has been adopted in several circuits". <u>Hasenfus</u>, 175 F.3d at 73 n.3.

<u>Hasenfus</u> recognized this general development by observing that "[w]here a state official acts so as to create or even markedly increase a risk, due process constraints <u>may</u> exist, even if inaction alone would raise no constitutional concern." <u>Id</u>. at 73 (emphasis added). However, even assuming such a showing, <u>Hasenfus</u> has observed that "[t]he basic due process constraint, where substance and not procedure is involved, is against behavior so extreme as to 'shock the conscience.'". <u>Id</u>. at 72.

The First Circuit then amplified its understanding of this threshold standard of behavior, explaining that "[o]utside of a few narrow categories, like the safeguarding of prisoners who have been wholly disabled from self-protection, this means conduct that is truly outrageous, uncivilized, and

intolerable." <u>Hasenfus</u>, 175 F.3d at 72. <u>See also</u> <u>Willahauck v.</u>
<u>Town of Mansfield</u>, 164 F.Supp.2d 127, 135  (D. Mass. 2001)
(Saris, D.J.) ("Even where the government has created or
markedly increased a risk of harm, no violation of substantive
due process occurs unless 'the behavior [is] conscience-
shocking or outrageous'", <u>citing</u> <u>Hasenfus</u>, 175 F.3d at 73).

However, even such heavily qualified recognition by the
First Circuit in <u>Hasenfus</u> of a possible "danger-creation
theory" exception to the <u>Deshaney</u> general rule must be read as
limited to the non law-enforcement context of liability for
deprivation of Constitutional rights within the meaning of 42
U.S.C. § 1983. For a criminal alien such as petitioner who has
been ordered removed or deported, there *is* no substantive due
process right not to be deported, nor is enforcement of the
removal order the "stuff from which substantive due process
violations can be fashioned." <u>Herrera-Inirio v. INS</u>, 208 F.3d
299, 309 (1st Cir. 2000)

Petitioner ignores the long-established precedent that
deportable or removable aliens have no substantive due process
right to remain in the United States.  <u>Harisiades v.</u>
<u>Shaughnessy</u>, 342 U.S. 580, 586-587 (1952); <u>see also</u> <u>United</u>
<u>States v. Oboh</u>, 92 F.3d 1082, 1087 (11th Cir. 1996) (en banc)
("We also note that defendants 'subject to deportation' have no
constitutional or statutory right to remain in this country.")
(citing <u>Harisiades</u>, 342 U.S. at 586-587); <u>Jean v. Nelson</u>, 727

F.2d 957, 967-968 (11th Cir. 1984) (en banc) (recognizing only
limited procedural due process rights for aliens subject to
deportation).

In Harisiades, the Supreme Court assessed the
Constitutional rights available to aliens as follows:

> Under our law, the alien in several respects stands on
> an equal footing with citizens [equal economic
> opportunity, personal liberty, criminal proceedings,
> and property], but in others has never been conceded
> legal parity with the citizen. Most recently, to
> protract this ambiguous status within the country is
> not his right but is a matter of permission and
> tolerance. The Government's power to terminate its
> hospitality has been asserted and sustained by this
> Court since the question first arose.

Id. at 586-87 (footnotes omitted).

Insofar as removable aliens have no Constitutional right
to remain in the United States, petitioner's substantive due
process challenge to execution of his removal order is directly
contrary to long established Supreme Court precedent. Id.  See
also Sad v. INS, 246 F.3d 811, 819 (6th Cir. 2001) ("[A]liens
illegally in the United States do not have a fundamental right
to remain", citing Harisiades v. Shaughnessy, 342 U.S. 580,
586-87 (1952)); Doherty v. Meese, 808 F.2d 938, 944 (2nd Cir.
1986)("there is no substantive due process right not to be
deported."); Linnas v. INS, 790 F.2d 1024, 1031 (2d Cir.
1986)("Congress has broad authority over the status of aliens,
and there is no substantive due process right not to be
deported. See e.g., Galvan v. Press, 347 U.S. 522, 530-32, 74
S.Ct. 737, 742-44, 98 L.Ed. 911 (1954); Harisiades v.

13

Shaughnessy, 342 U.S. 580, 590-91, 72 S.Ct. 512, 519-20, 96
L.Ed. 586 (1952); Basset v. United States Immigration and
Naturalization, 581 F.2d 1385, 1386-87 (10th Cir. 1978).").

In direct terms of the United States government's action
in enforcing a final order of removal, the First Circuit has
held that "Executive actions that do no more than comport with
valid statutory commands simply are not the stuff from which
substantive due process violations can be fashioned." Herrera-
Inirio v. INS, 208 F.3d 299, 309 (1st Cir. 2000), citing
Kleindienst [v. Mandel], 408 U.S. [753 (U.S. 1972)] at 770, 92
S.Ct. 2576) (emphasis added).[5]

Moreover, the First Circuit in Herrera-Inirio
characterized any other approach to substantive due process
analysis in the immigration-enforcement context as "contrary to
precedent". Herrera-Inirio, 208 F.3d at 309. Nonetheless, the
court observed that even if it "analyzed the situation under
the type of substantive due process analysis that
characteristically attaches to executive action outside the
immigration context . . . . [t]he removal order in this case,
while strong medicine, in no way sinks to the level of
'outrageous, uncivilized, and intolerable' conduct, Hasenfus v.
LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)(emphasis added),

---

[5] See 8 U.S.C. §§ 1227(a) et seq. (describing classes of
deportable aliens that "shall, upon the order of the Attorney
General, be removed".). Petitioner's conviction for
Importation of Heroin renders him deportable from the United
States.

nor does it 'shock the conscience,' _Evans v. Avery_, 100 F.3d 1033, 1038 (1st Cir. 1996).") _Id._  _See also_ _Edwards v. INS_, 2003 WL 22097780, *3 (E.D. Pa. 2003) ("Allowing removal to be stayed based on [the state created danger exception] doctrine would conflict with both immigration statutes and the Convention Against Torture, and would be an extension of the concept of substantive due process that has not previously been accepted by the United States Supreme Court or any court of appeals.").

More recently, in _Rivera v. State of Rhode Island_, 402 F.3d 27 (1st Cir. 2005), the First Circuit set out in some detail the standard for establishing a substantive due process claim.  The court held that in order to establish a substantive due process claim "the plaintiff must first show a deprivation of a protected interest in life, liberty, or property." _Rivera_, 402 F.3d at 33-4.  In this connection, the court remarked that "[I]t is not enough to claim the government action shocked the conscience." _Id._ at 34.  Next, if deprivation of a protected interest is established, then "the plaintiff must show that the deprivation of this protected right was caused by government conduct." _Id._.

The stark facts of _Rivera_, and the First Circuit's particular analysis that no substantive due process claim was made out there, are well worth study in the instant matter.  In _Rivera_, Jennifer, a 15-year old witness to a previous homicide,

was shot dead in front of her house to stop her from testifying in a murder trial. Jennifer's mother filed for recovery under 42 U.S.C. § 1983 alleging that, although the Jennifer was continually threatened with death if she testified as a witness for the prosecution in the murder trial, she was repeatedly assured by the Providence Police Department that she would be safe, and based upon these promises of protection, she agreed to and did testify at a grand jury hearing. <u>Rivera</u>, 402 F.3d at 31-2.

The threats against 15-year old Jennifer if she agreed to testify continued however, and police detectives were repeatedly informed of these death threats. The murder defendant was then released on bail, and the state Assistant Attorneys General issued a subpoena for Jennifer to testify in the murder trial. Jennifer continued to express to the Providence Police Department and to the state's attorneys that she was afraid to go to court because she would be killed, and the state actors promised to protect her, again, in order to secure her testimony. As a result of the promises for protection, Jennifer continued in her willingness to testify at the murder trial and to identify the murder defendant as the killer.

The day before Jennifer's scheduled trial appearance, the murder defendant's half-brother shot Jennifer in the head in front of her house, killing her. The murder defendant was

16

later also convicted of Jennifer's murder and conspiracy to commit murder because he had ordered Jennifer be killed.  Id. The complaint by Jennifer's mother for recovery under 42 U.S.C. § 1983 alleged that despite the repeated threats to Jennifer's life, her repeated requests for protection, and the defendants' repeated assurances that they would protect her, the defendants took no action to protect Jennifer, and failed to place her in the state's witness protection program.  The complaint alleged that the defendants undertook a duty to protect Jennifer by identifying her as a witness to the murder, taking her statement, promising to protect her if she testified, and subpoenaing her to testify before the grand jury and at the trial of the murder defendant, and that the acts and omissions of the defendants and their failure to take appropriate steps to protect Jennifer from the risk that the murder defendant posed to her, despite her requests for protection, violated her substantive due process rights. Id. at 36.

In reviewing the district court's dismissal of Rivera's complaint under Fed R. Civ. P. Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the Rivera court took plaintiff's allegations as true, and afforded plaintiff all reasonable inferences there from.  Id. at 33. Rivera observed also the Supreme Court's holding that in substantive due process cases "claims must be carefully scrutinized to determine if the alleged facts support the

conclusion that the state has violated an individual's constitutional rights". Rivera, 402 F.3d at 33, quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992). Rivera held that scrutiny of the complaint involves two separate inquiries: 1) whether the facts alleged state a claim for violation of constitutional rights, and, if so 2) whether the allegations meet other requirements as to particular categories of defendants to establish a claim under 42 U.S.C. § 1983. Rivera at 33.

However, on the allegations of the complaint, assumed to be true for determination of a motion to dismiss, the court held that "we find no cognizable claim of a violation of a constitutional right is stated". Id.

The Rivera court paused to note that the Due Process Clause "acts as a check on the government, not on actions by private individuals", but noted at the same time that "there are possible scenarios of government involvement with a private individual which amount to government conduct – for example, if the police had handed the murderer the gun with instruction to shoot [plaintiff's decedent]." Rivera, 402 F.3d at 34.

In Rivera, however -- as in the instant case -- the claimed government involvement in causing decedent's death was "much more indirect: the government is said to have enhanced the danger posed by a private individual and then failed to protect against the risk." Id. That is of course precisely

what the instant petitioner appears to be arguing as his substantive due process claim:  that because petitioner briefly served as a confidential source,[6] that petitioner thereby became endangered by the possibility of revenge from those who might become aware of his activities, and so the government's efforts at removing petitioner back to Nigeria, where petitioner posits the risk to be greatest, is a failure to protect against that risk.

The First Circuit in Rivera, while reciting the Supreme Court's core holding in Deshaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989) that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause", also acknowledged that "[t]he Supreme Court also suggested, but never expressly recognized that when the state creates the danger to an individual, an affirmative duty to protect might arise." Rivera, 402 F.3d at 34-5.  The Rivera court then noted that the First Circuit "has, to date, discussed the state created danger theory, but never found it actionable on the facts alleged."  Id. at 35.

But the First Circuit in Rivera observed further that "[e]ven if there exists a special relationship between the

---

[6] By petitioner's own concession, he stopped his confidential source activities around August of 1986 when his probation officer advised him such activity was inconsistent with the terms of his probation.  Affidavit of Frank I. Enwonwu, dated April 20, 2005, at p. 11, ¶¶ 121-7.

state and the individual or the state plays a role in the creation or enhancement of the danger, under a supposed state created danger theory, there is a further and onerous requirement that the plaintiff must meet in order to prove a constitutional violation: the state actions must shock the conscience of the court." Id. (emphasis added). In fact, "[t]he state action must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Id. at 36, quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998).

Rivera said too that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience shocking level." Rivera, 402 F.3d at 36, quoting Sacramento v. Lewis, at 849 (emphasis added by Rivera). In the instant matter of course there has been no allegation of intention to injure petitioner, and at any rate the intent to execute petitioner's removal order is obviously justified by the government's considerable interest in complying with the statutory directive to remove criminal aliens from the United States convicted of very serious drug crimes, such as Importation of Heroin. Herrera-Inirio v. INS, 208 F.3d at 309 (Executive compliance with statutory commands cannot afford basis for substantive due process claim).

As to the allegations against the state's attorney
defendants, the plaintiff argued that a danger was created as a
result of their promising to protect Jennifer if she testified
and subpoenaing her to testify before the grand jury and at the
murder trial, knowing that Jennifer was reluctant to testify
without such protection because of the repeated death threats.
In answer to Rivera's argument that the state's two actions in
identifying Jennifer as a witness and taking her statement
compelled her to testify and thus enhanced her danger, the
Rivera court concluded that "[b]oth are necessary law
enforcement tools, and cannot be the basis to impose
constitutional liability on the state."  Rivera, 402 F.3d 27 at
37.

As to Rivera's argument that the issuance of a subpoena
enhanced the risk to Jennifer, the Rivera court held that
"[i]ssuing a subpoena is also a vital law enforcement tool",
and that "[w]hile requiring Jennifer's testimony may in fact
have increased her risk, issuance of a subpoena did not do so
in the sense in the sense of the state created danger doctrine.
Every witness involved in a criminal investigation and issued a
subpoena to testify in a criminal proceeding faces some risk,
and the issuance of a subpoena cannot become the vehicle for a
constitutional claim against a state."  Rivera, 402 F.3d at 37.

As to the allegations that the defendants' assurances to
Jennifer, Rivera observed that "[t]here is no doubt that, if

accepted as true, the complaint shows that Jennifer may have been subjected to an increased risk, if she was promised protection, not given it, and relied on the promise.  The state, in making these promises, may have induced Jennifer into a false sense of security, into thinking she had some degree of protection from the risk, when she had none from the state." Id.  But ultimately, the First Circuit concluded that Rivera's complaint failed to state a claim upon which relief could be granted, because "[m]erely alleging state actions, which render the individual more vulnerable to harm, under a theory of state created danger, cannot be used as an end run around Deshaney's core holding." Rivera, 402 F.3d at 38.

The instant petitioner's claim of constitutional violation obviously also fails to state a claim upon which relief may be granted under Rivera.  Rivera's claim was based upon immediate threats of death to an innocent 15-year old witness, who was subpoenaed for testimony and explicitly promised protection of her life by the state if she testified, yet who was not protected by the state and was murdered as a result.

The instant petitioner, in marked contradistinction, an adult arrested while smuggling Heroin into the United States, voluntarily cooperated in apprehending several of his criminal contacts immediately thereafter -- 19 years ago -- in order to spare himself a term in Federal prison.  Petitioner concedes his cooperation was voluntary, self-serving, compensated, and

limited.[7]  Moreover, the use of informants and confidential
sources is exactly the kind of "necessary law enforcement
tool[]" identified in Rivera that "cannot be the basis to
impose constitutional liability on the state."  Id. at 37.

In addition, even if petitioner could have established
some constitutionally protected right, petitioner wholly fails
to establish that even that any assumed danger from unnamed
individuals bent on revenge against petitioner was a
"deprivation of this protected right . . . caused by government
conduct."  Rivera, 402 F.3d at 34 (emphasis added). Petitioner
makes no assertion that his cooperation in the arrest of his
confederates was anything other than voluntary, and pragmatic
as a way to avoid or mitigate a prison term.

And to whatever extent knowledge of petitioner's identity
as a former confidential source is more widespread today than
it was 19 years ago -- the apparent linchpin of petitioner's
claim of danger -- petitioner alone bears the responsibility.
Petitioner does not assert that DEA or the former INS somehow
bungled the protection of his identity as a confidential
source, nor does he advance any plausible basis other than his
own continuing and successful efforts at self-publication as
explanation for whatever current notoriety he may now enjoy.
It was petitioner himself who consented to an interview and
posed for a photograph in an article by the Boston Globe in

_____

[7] About eight months, from January to August, 1986.  See

23

1997, and who more recently has been quoted by the AP, and it was petitioner who filed the instant habeas corpus petition divulging the alleged details of his actual and attempted confidential source activities.

It was of course open to petitioner to litigate his present claims under seal, see LR, D.Mass. Rule 7.2, and so to eliminate the possibility of public exposure of his claims and alleged history. But petitioner did not choose that course, and this is telling.[8] Indeed, petitioner's ongoing course of action respecting publication of his identity as a former confidential source is not inconsistent with an effort to create or bootstrap the plausibility of a claim of possible danger from his former activities due to the publicity of this lawsuit. At the very least, the petitioner's apparent lack of ordinary prudence in dealing with his past identity as a confidential source severely undercuts the credibility of his claim of genuine danger.

In the end, any alleged danger that may exist for petitioner is as a result of his own choice to import Heroin to the United States inside his body. Petitioner's conviction for Importation of Heroin in Federal Court in 1986 at once rendered him deportable from the United States, and so his present

---

Affidavit of Frank I. Enwonwu, p. 11.
[8] Petitioner previously also sought habeas corpus relief by a public filing in the Northern District of Florida in 1998 in No. 5:98cv00210RH (N.D. Fl. 1998). That case was dismissed for lack of subject matter jurisdiction.

amenability to removal from the United States is a direct
consequence of his very serious criminal activity. Although
petitioner's sensible cooperation against the two New York
criminal confederates in the United States 19 years ago
possibly exposed his cooperation with the DEA in that case, it
does not appear that in the past 19 years petitioner has been
in any real danger in the United States as a result.

Any alleged additional danger to petitioner from an
alleged breach of a promise[9] not to deport petitioner to Nigeria
is at the margin, and at any rate does not excite any
constitutional duty by the government.  Even assuming that "the
unkept promises may have rendered [petitioner] more vulnerable
to the danger . . . merely rendering a person more vulnerable
to risk does not create a constitutional duty to protect."
Rivera, 402 F.3d at 37.

In sum, 1) a deportable alien does not have a substantive
due process right to remain in the United States,  Harisiades
v. Shaughnessy, 342 U.S. 580, 586-587 (1952), 2) there is no
government duty to protect petitioner from any allegedly
enhanced danger in Nigeria due to his long-past activities as a
confidential source, Rivera, 402 F.3d at 38, and 3)
"[e]xecutive actions that do no more than comport with valid

---

[9] Disputed by respondent, but assumed as true for determination
of the Motion to Dismiss.  What is more, the allegation in
petitioner's most recent declaration is that the DEA, not the
INS allegedly promised non-deportation.  Cf. 28 C.F.R. § 0.197

statutory commands simply are not the stuff from which substantive due process violations can be fashioned", <u>Herrera-Inirio</u>, 208 F.3d at 309.

Accordingly, the petition fails to state a claim of substantive due process violation, and the case should be dismissed.

**CONCLUSION**

For all the reasons set out above, the Court should dismiss this action and deny all other relief sought.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: <u>s/Frank Crowley</u>
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114
(617) 565-2415

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused true copy of the above document to be served upon counsel for petitioner by mail on April 25, 2005.

<u>s/Frank Crowley</u>
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114

---

(promises of non-deportation not binding unless in writing signed by the former INS Commissioner).