UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In The Matter Of The Application Of:<br>FRANK IGWEBUIKE ENWONWU<br>Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary Of<br>Department Of Homeland Security,<br>BRUCE CHADBOURNE, Interim Field<br>Officer Director for Detention and<br>Removal, Boston Field Office, Bureau<br>of Immigration and Customs<br>Enforcement, DEPARTMENT OF<br>HOMELAND SECURITY, ANDREA J.<br>CABRAL, Sheriff, Suffolk County House<br>Of Correction<br><br>Respondents. | CIVIL ACTION FILE NO:<br>05-10511 WGY |

**PETITIONER'S SECOND SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF HIS WRIT FOR HABEAS CORPUS RELIEF**

**SUMMARY STATEMENT**

On or about May 3, 2005, this Honorable Court allowed the Petitioner ("Mr. Enwonwu") two weeks to submit a memorandum of law to address additional questions regarding Burden of Proof issues pertaining to the "state-created danger". This Honorable Court also allowed the Petitioner latitude to brief other additional issues within the scope of the proceedings. The Respondent ("Government") was allowed two weeks to respond to Mr. Enwonwu's submission.

1

**ARGUMENT**

A. **THE FIRST CIRCUIT HAS CONSISTENTLY HELD THAT SUBSTANTIAL WEIGHT MUST BE GIVEN TO THE FINDINGS OF AN IMMIGRATION JUDGE.**

In Aguilar-Solis v. I.N.S., 168 F.3d 565 (1st Cir. 1999), our circuit held that an Immigration Judge ("IJ"), like other judicial officers, possesses broad discretion over the conduct of trial proceedings. The Court ruled that although there is an obligation to defer to hearing officer in asylum proceedings so long as "such a determination merits judicial approbation as long as the findings on which it rests have sufficiently sturdy roots in the administrative record." Id., at 567.

More recently, in Akinwande v. Ashcroft, 380 F.3d 517, 521 (1st Cir. 2004), the Circuit Court ruled that the IJ's credibility findings and findings of fact would be reviewed under deferential substantial evidence standard, citing INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). In the instant case, Mr. Enwonwu satisfied the even more stringent standard of "more likely than not" under the "withholding of deportation" form of relief.[1]

---

[1] Under the Immigration and Nationality Act ("INA"), non-citizens applying for asylum pursuant to 8 U.S.C. §1101(a)(42)(A) or withholding of removal under 8 C.F.R §208.16(b)(1) must demonstrate "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Non-citizens seeking protection under the Convention Against Torture ("CAT"), on the other hand, must meet a lower standard; they need only show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. §208.16(c)(2). The standard for proving a well-founded fear of future persecution contains both subjective and objective components. See Alvarez-Flores v. INS, 909 F.2d 1, 5 (1st Cir. 1990). Whether past or future, a person's experience must rise above unpleasantness, harassment, and even basic suffering to qualify as persecution for purposes of asylum. See Disu v. Ashcroft, 338 F.3d 13, 17 (1st Cir. 2003), citing Immigration and Nationality Act, §101(a)(42), 8 U.S.C. §1101 (a)(42). Mr. Enwonwu was held to a much higher and difficult legal standard because he was precluded from filing for asylum due to his prior 1986 conviction.

Immigration Judge Shapiro ("Judge Shapiro") mainly based his determinations on the candid recitations of Professor Watts and testimony of Special Agent Herbert Lemon ("Agent Lemon"). Furthermore, Judge Shapiro gave specific reasons for those determinations. Akinwande, 380 F.3d at 521, citing Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004) ("Where ... the judicial officer who saw and heard the witness makes an adverse credibility determination and supports that determination with specific findings, an appellate court should treat that determination with great respect.") (citations omitted).

Stunningly, the Board of Immigration Appeals ("BIA") decision utterly failed to grant any deference whatsoever to Judge Shapiro's thoughtful analysis and his patient and experienced stewardship over the complex proceedings.[2] In any event, a due process

---

[2] Judge Shapiro has well over thirty (30) years experience as a hearing officer. He has even-handedly presided over *thousands* of cases and arguably possesses more experience and intellect than the rest of the three-member BIA panel *combined*. His burnished credentials are impeccable and unrivaled amongst the other judges in the *entire* Executive Office for Immigration Review ("EOIR"). The BIA chirps loudly from its remote Virginia perch by cavalierly disregarding Judge Shapiro's painstaking and reasoned analysis. They cite only *one* measly case (In re M-B-A, 23 I&N Dec. 474 (BIA 2002)) in their sparsely worded *per curiam* decision, and even that case was recently discredited by a nearby circuit. Bankole v. INS, 2003 WL 21309217 (2nd Cir.), at fn. 2.

Lastly, the BIA is but an appendage of the Department of Homeland Security (read: the Executive branch) further putting into context which master it truly serves. 8 C.F.R. § 3.1(d)(1) (The Board is given the power to exercise discretion and authority conferred upon the Attorney General "by law as is appropriate and necessary for the disposition of the case."). To put a judicial façade to an executive branch office that in turn supervises itself simply turns reason on its very head! This ugly truth tellingly reveals itself in cases like this one in which an individual's fate is whimsically determined by a subset of the same agency that seeks to deport him. Mr. Enwonwu humbly pleads with this Honorable Court to forcefully step in and prevent this cyclical travesty of justice from further perpetuating itself. The unconstitutionality of this Kafkaesque "judicial" contraption is evident by the reinforced perception that it answers to none while systemically harming many. The BIA slavishly serves its executive master by rubber-stamping prior orders or removal and quashing the rare "adverse" decision that attempts

challenge to the BIA's summary procedure would be considered de novo by the federal court. See Disu, 338 F.3d at 17; 8 C.F.R. §1003.1(a)(7).

B. **THE GOVERNMENT BEARS THE BURDEN OF PROOF TO PROVE THAT THE STATE-CREATED DANGER IMPOSED ON MR. ENWONWU HAS NOT DISSIPATED.**

Ordinarily, a non-citizen bears the burden of proving that it "is more likely than not" that he will be tortured if removed to his native country. See 8 C.F.R. §208.16(c)(2).[3] Furthermore, that torture is to be accomplished "with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. §208.18(a)(1). Under 8 C.F.R. §208.18(a)(7), that "acquiescence ... requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal activity to intervene to prevent such activity.

Mr. Enwonwu met and exceeded such burdens of proof at the *administrative* level by successfully convincing the EOIR court in Boston of his legitimate CAT[4] claims. The

---

to establish a toehold on an already rigged quota system of fleeting exemptions.

[3]  It just so happens that 8 C.F.R. § 208.16(c)(3) specifies more factors for consideration of evidence than under Article 3, §2 of the CAT. Mr. Enwonwu's case was presumably considered by Judge Shapiro under the latter standard and passed muster under that set of rigorous standards.

[4]  See generally, United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec.10, 1984, 23 I.L.M. 1027 (1984), as modified, 24 I.L.M. 535 (1985). Congress has not specifically enacted legislation implementing the Convention, but has compelled the "appropriate agencies" to do so through regulations. United States Policy with Respect to the Involuntary Return of Persons in Danger of Subjection to Torture, Pub.L. 105-277, Div. G., Title XXII, § 2242, Oct. 21, 1998, 112 Stat. 2681-822. The Attorney General did so in February 1999 at 8 C.F.R. § 208. The regulations state, in part:

4

EOIR court agreed that his participation as a Confidential Informant for the Drug Enforcement Administration ("DEA") and others coupled with the dangerous conditions he would face were he to be deported to a country whose government routinely turned a blind eye to torture warranted relief. Compare Ontunez-Tursios v. Ashcroft, 303 F.3d 341, 354 (5th Cir. 2002) (willful blindness by government officials enough to satisfy burden of demonstrating their acquiescence to torture).[5] Moreover, changed country conditions often speak volumes about the objective reasonableness of a non-citizen's fear that persecution lurks should he return to his homeland. Disu, supra, at 17; see also, Kazlauskas v. INS, 46 F.3d 902, 906 (9th Cir. 1995).[6] This Honorable Court's evidentiary admission of the 2005 State Department Report on country conditions in Nigeria should

---

If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture. Protection ... will be granted either in the form of withholding of removal or in the form of deferral of removal. An alien entitled to such protection shall be granted withholding of removal unless the alien is subject to mandatory denial of withholding of removal .... If an alien entitled to such protection is subject to mandatory denial of withholding of removal ... the alien's removal shall be deferred .... 8 C.F.R. § 208.16(c)(4); Sulaiman v. Attorney General, 212 F.Supp.2d 413, 416 (E.D. Pa. 2002).

[5] The Government should not even bother attempting to argue the BIA's tired line that it historically declines to hold that expatriate criminals are a discrete 'social group'. In order to obtain protection under Article 3 of the CAT, harm need not be on account of a protected characteristic, as long as the non-citizen meets the requirement as required by law. Sulaiman, 212 F.Supp.2d at 416. As cogently stated in Kamalthas v. INS, 251 F.3d 1279, 1283 (9th Cir. 2001), "claims for relief under the Convention are analytically separate from claims for asylum under the INA" and are "not merely a subset of claims for either asylum or withholding of removal."

[6] As a side note, at least one circuit has found that that an applicant is not required to demonstrate a country-wide fear of persecution to establish asylum [or withholding] eligibility, at least after he has demonstrated past persecution. See Singh v. Ilchert, 63 F.3d 1501, 1510-11 (9th Cir. 1995).

5

serve to further cement the panoply of human rights abuses that still fester in that country.

With respect to the burden of proof at the present *judicial* level, at least one circuit has placed the burden on the government. In Kneipp v. Tedder, 95 F.3d 1199 (3rd Cir. 1996), the court fashioned a four-pronged test for the "state-created danger" which the *government* must meet. First, the "harm" must be foreseeable and direct. Id., at 1208. Second, the state actors are acting "in willful disregard for the safety of the plaintiff." Id. Third, "there existed some relationship between the state and the plaintiff." Id. Lastly, "the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." Id.

The Petitioner will address these elements *in seriatim*. First, the Government must disprove that the three individuals convicted through Mr. Enwonwu's cooperation as a Confidential Informant are not still bent on harming him upon his forced return to Nigeria. Specifically, the Government must prove that it is not foreseeable that these individuals or their confederates will seek retribution for their incarceration and/or lost profits.[7] Even

---

[7] Court records reluctantly produced by the Government show that at least two individuals implicated by Mr. Enwonwu in this jurisdiction pled guilty to drug charges and served twenty-four (24) months in prison before being released. Although their whereabouts are unknown, the same cannot be said for Mr. Enwonwu. As recently as last month, he was "outted" as a Confidential Informant by the Government during Agent Lemon (and agent Pettigrew's) open hearing testimony attended by the media. See Coyne v. Cronin, 386 F.3d 280 (1st Cir. 2004) (deliberate indifference or conscience-shocking behavior when agent knew that there was a substantial risk that inmate would be so exposed, or that agent failed to inform prison officials of the security risks to inmate after he was exposed as an informant ). See Petitioner's (First) Supplemental Memorandum of Law in Support of His Writ for Habeas Corpus Relief, at 11-13. Word of Mr. Enwonwu's plight has markedly increased within the inmate population in Massachusetts (who have access to local newspapers) as a result of Agent Lemon's testimony, to the point that Petitioner's attorney had to urgently request the Suffolk County Sheriff's Office (jailors) to place his client in protective custody. News of Petitioner's dilemma also

though the genesis of Mr. Enwonwu's participation as a confidential informant began in 1986, there is nothing to suggest that the existence or the memories of those implicated has dissipated over time.[8]

The second element requires the application of the "shocks the conscience" test. As stated in Mr. Enwonwu's last brief (submitted on May 2, 2005), the government has had him in physical custody since September 2004, thereby creating a special duty to ensure his safety and general welfare. If the government has had ample time to reflect on its decision to deport Mr. Enwonwu (despite the obvious danger to his life), the Kneipp court examines its conduct under the "deliberate indifference" standard, citing Nicini v. Morra, 212 F.3d 798, 809-10 (3rd Cir. 2000) (en banc); Compare, Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (In situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to "shock the conscience" for the purpose of a due process claim). The Government obviously knows of the continuing threat to Mr. Enwonwu's life and clearly shows

---

spread quickly to various Nigerian web sites which by now have surely been read and/or transmitted to those who wish to do him serious harm (i.e. persons convicted or who lost drugs and/or money due to his snitching, military-influenced drug cartels intent on enforcing a code of silence, government officials enforcing Decree 33, etc.).

[8]   It is very likely and foreseeable for criminal elements who lost time and/or money as a result of Mr. Enwonwu's government-induced participation to harbor a grudge of some kind against him despite the passage of time. The illicit drug business is notoriously cutthroat and the stakes for control, power and profit have only skyrocketed since 1986. Arguably, many non-political killings worldwide stem in one way or another from the dangerous drug trade. Yet notably, in some countries like Afghanistan, Colombia and Nigeria (among others), the line between politics and narcotics distribution is often blurred, making the identifying motive behind such violent killings hard to distinguish.

"deliberate indifference" by obstinately still seeking to deport him.[9] See, Coyne v. Cronin, 386 F.3d 280 (1st Cir. 2004) (Due Process Clause is triggered where the government affirmatively acts to increase the threat to an individual of third-party private harm or prevents that individual from receiving assistance and such conduct shocks the conscience).

The third element regarding the special relationship between the Government and the Petitioner is also evident by the fact that the former is holding the latter in custody. See Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001) ("Once the state restrains an individual's liberty, rendering that individual unable to act for himself ... the state does acquire an affirmative duty to protect." (citation omitted)); see also, Walton v. Alexander, 44 F.3d 1297, 1299 (5th Cir. 1995) (en banc).

Finally, the last element is satisfied by virtue of the fact that returning Mr. Enwonwu to Nigeria creates opportunities for many of the aforementioned parties,[10] to torture and/or kill him that otherwise would not have existed without the Government's intervention (i.e. forcibly shipping him off on a one-way flight to a waiting inferno).

Other district courts have already granted relief for confidential informants under similar circumstances. See Builes v. Nye, 239 F.Supp.2d 518 (M.D. Pa. 2003); Rosciano v. Sonchik, U.S. Dist. LEXIS 25419 (D. Arizona, 2002); but c.f. Momennia v. Estrada,

---

[9] Agent Lemon testified during the first day of the evidentiary hearing that he recruited Mr. Enwonwu the same night he was arrested at Logan airport. He further conceded (as he previously attested in the 1999 immigration case) that Mr. Enwonwu was instrumental in the arrest and prosecution of at least two other Nigerians (three according to his sworn testimony taken in the immigration transcript).

[10] Supra, at fn. 7.

268 F.Supp.2d 679, 684 (N.D. Tex. 2003) (Kaplan, U.S.M.J.) (The court need not decide whether the Fifth Circuit would recognize the right of a criminal alien to prevent the execution of an otherwise valid removal order under a "state-created danger" theory because petitioner has failed to prove the elements of such a claim in any event). As such, Mr. Enwonwu humbly requests this Honorable Court to sound the clarion call in this jurisdiction.

C.  **EVEN IF THE GOVERNMENT WANTED TO AVOID AN ADVERSE FINDING BY RELEASING MR. ENWONWU PRIOR TO THIS HONORABLE COURT'S RULING, HE WOULD STILL BE ELIGIBLE FOR HABEAS RELIEF.**

At least one local court has held that parole or some other type of pretrial release on personal recognizance constitute sufficient restraints on a person's liberty to satisfy the "in custody" requirement for habeas relief. Omosefunmi v. Attorney General of Com. of Massachusetts, 152 F.Supp.2d 42 (D.Mass.,2001) (Stearns, J.). That court went on to explain that the "in custody" determination is made at the time the petition is filed. Id., citing, Carafas v. LaVallee, 391 U.S. 234, 238 (1968), and United States v. Brown, 1999 WL 1269197 at *2 (N.D.Ill, 1999) (Supreme Court has repeatedly stated habeas statute requires the petitioner to be 'in custody' when the application for habeas corpus is filed). All that is necessary is to make sure that a petitioner be in custody at the time the petition is filed. Young v. Vaughn, 83 F.3d 72, 73 (3rd Cir. 1996); 28 U.S.C. §2241(c)(3). As such, the Government is not excused from maintaining its ongoing responsibilities before this Honorable Court even if it releases Mr. Enwonwu prior to any ruling.

## CONCLUSION

For the foregoing reasons, this Honorable Court should GRANT Mr. Enwonwu's Writ of Habeas Corpus petition pursuant to his proposed findings enumerated in his original motion and DENY the Petitioner's Motion to Dismiss.

Respectfully submitted,
FRANK IGWEBUIKE ENWONWU,

By his attorney,

_____
Robert B. Carmel-Montes, Esq.
The Carmel Law Group
One Center Plaza, Suite 240
Boston, MA 02108
Tel. 617.227.6355
BBO#: 639476

DATED: 5-17-05

CERTIFICATE OF SERVICE

I, Robert B. Carmel-Montes, Esq., do hereby certify that I have on this 17th day of May, 2005, served via First-Class mail, a true and accurate copy of the **PETITIONER'S SECOND SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HIS WRIT FOR HABEAS CORPUS RELIEF** to:

Frank Crowley
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
JFK Station
Boston, MA 02114

Signed under the pains and penalties of perjury.

